IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01868-REB-MEH

DEXTER HARRIS,

       Plaintiff,

v.

DENVER HEALTH MEDICAL CENTER,
CHRISTIAN STOB, Representative for Denver Health,
GARY WILSON, Administrator for D.D.C., and
DENVER CITY AND COUNTY,

       Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge**.

       Before the Court are a Motion for Summary Judgment by Defendants Denver Health and

Hospital Authority and Christian Stob ("Hospital Defendants") [filed November 29, 2012; docket

#74] and  a Motion for Summary Judgment filed by Defendants Gary Wilson and the City and

County of Denver ("Corrections Defendants")  [filed November 29, 2012; docket #76].  In

accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, these matters are referred

to this Court for recommendation [dockets #75 and #78].  The motions are fully briefed, and oral

argument would not materially assist the Court in its adjudication of the motions.  Based upon the

record contained herein, the Court RECOMMENDS that the District Court **grant** Defendants'

motions.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify

## BACKGROUND

Plaintiff, an inmate proceeding *pro se*, initiated this action on July 19, 2011. (Docket #1-1 at 2.)  In response to Magistrate Judge Boland's order during initial review, Plaintiff filed the operative pleading in this matter, the Amended Complaint, on September 8, 2011. Defendants responded to Plaintiff's Amended Complaint by filing motions to dismiss on November 16, 2011, arguing that Plaintiff failed to state plausible claims for relief pursuant to Supreme Court precedent, that Plaintiff failed to plead personal participation by the individual Defendants, that the Denver Detention Facility is an improper party, and that Plaintiff's claims were barred by the statute of limitations. On May 10, 2012, this Court recommended that the District Court find Plaintiff's claims barred by the statute of limitations or, in the alternative, grant Defendants' motions to dismiss Plaintiff's official-capacity claims and his claims against the Detention Center, but deny the motions to dismiss Plaintiff's claims against the remaining Defendants.  On August 27, 2012, Judge Blackburn rejected in part the alternative recommendation to dismiss all claims as time-barred, but as to those claims that were timely, accepted the remainder of the recommendation.

The case proceeded through discovery.  On November 29, 2012, Defendants filed the respective present motions for summary judgment arguing there exist no genuine issues of material

those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

fact concerning Plaintiff's Eighth and Fourteenth Amendment claims, that the Plaintiff cannot demonstrate triable issues concerning municipal liability, and that the individual Defendants are entitled to qualified immunity.  Plaintiff responds that the Defendants' exhibits demonstrate the only attention he received from Defendants for dental care was prescription pain medication and tooth extraction, thus confirming Plaintiff's theory of a "pull teeth only" policy.  Plaintiff also contends Defendants did nothing to treat the disease that caused his tooth decay.  Further, Plaintiff asserts that the Defendants have failed to come forward with actual dental care policies for detainees in the Denver Detention Center.  Finally, Plaintiff states that Defendants' municipal liability attaches in their "deliberate choice to follow a course of action from among various alternatives."  Plaintiff attaches to his response brief a copy of written responses to the Hospital Defendants' discovery requests.

The Hospital Defendants reply that, even if they had timely received Plaintiff's discovery responses (which they claim they did not), Plaintiff failed to sign them and, therefore, the requests for admissions are deemed admitted.  Further, the Hospital Defendants assert that Plaintiff only responded to the Corrections Defendants' statement of facts and, thus, the Hospital Defendants' statement of facts are deemed admitted.  The Hospital Defendants further argue that Plaintiff failed to designate an expert to testify concerning any alleged deliberate indifference to his medical needs; thus, say Defendants, without expert testimony, Plaintiff would be unable to prove negligence, much less deliberate indifference.  Finally, the Hospital Defendants contend the facts demonstrate that Stob is entitled to qualified immunity and that Plaintiff received timely dental care from multiple providers on numerous occasions; any difference of opinion about his treatment is not actionable.

The Corrections Defendants reply that the dental records and affidavits submitted, as well

as Plaintiff's deemed admissions, leave no factual dispute for a jury to determine.  They further argue that Plaintiff has failed to come forward with any evidence demonstrating an issue of fact. In addition, the Corrections Defendants contend the Plaintiff has failed to assert facts demonstrating an unconstitutional policy or custom by the City.  Finally, the Corrections Defendants argue that Defendant Wilson is entitled to qualified immunity, as the Plaintiff has failed to show Mr. Wilson personally participated in the alleged constitutional violation.

## FINDINGS OF FACT

The Court finds the following facts viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.  The facts noted here reflect the Court's previous orders and constitute only those necessary for the Court's analysis of the arguments raised in the present motions.

1.      The Denver Sheriff Department ("DSD") supervises the jail facilities of The City and County of Denver.  Exhibit C to Corrections Defendants' Motion, ¶2, Affidavit of Gary Wilson, Director of Corrections and Undersheriff, docket #76-3.

2.      Plaintiff was in the custody of jails supervised by the DSD during the following time period: November 15, 2008 to September 7, 2011.  Exhibit A to Corrections Defendants' Motion, ¶ 2, Affidavit of Sergeant Joseph Garcia, docket #76-1.

3.      On November 22, 2008, Plaintiff completed a request for medical assistance, stating "I have an abscess and need teeth cleaned."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00010, docket #74-2.

4.      On November 25, 2008, a Licensed Practical Nurse assessed his condition and noted, "has had issue intermittently x 1 year. Has not sought medical attention. No c/o bleeding / foul taste. Will

4

treat per protocol." *Id.*  Plaintiff was scheduled for the "dental line" and given ibuprofen.  *Id.*

5.      On December 4, 2008, Plaintiff was treated by the dentist, who noted "recession w/ cervical wear #14," recommended soft brushing and dental pick, and ordered "Motrin 800 MG 1 BID x 14 days."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00011, docket #74-2.

6.      On May 6, 2009, Plaintiff completed a request for medical assistance, stating "gums bleeding, sore – infected."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00012, docket #74-2.

7.      On May 8, 2009, a nurse assessed his condition and noted "No S/S infection noted ... NO evidence of dental abscess," and prescribed hydrogen peroxide (H2O2) mouth rinse "BID x 10 days." *Id.*

8.      On October 20, 2009, Plaintiff completed a request for medical assistance, stating "tooth ache - extreme pain."  He was evaluated that same day by a nurse, who noted no swelling, but scheduled Plaintiff to a see a dentist (DDS) on 10/27/09, prescribed Motrin, and advised Plaintiff to report any swelling.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00014, docket #74-2.

9.      On October 20, 2009, Plaintiff again completed a request for medical assistance, stating "dental – emergency – toothache – extreme pain."  He was evaluated the next morning, October 21, 2009, by a nurse, who noted swelling on the left side and noted Plaintiff was scheduled for the dental line.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00013, docket #74-2.

10.      On October 22, 2009, a doctor assessed Plaintiff's condition and prescribed penicillin and

Motrin.  *Id.*

11.     On October 27, 2009, Plaintiff was treated by a dentist who noted that tooth #15 was painful and slightly mobile, and that Plaintiff was taking penicillin.  The dentist referred Plaintiff to Denver Health Medical Center – also known as Denver Health and Hospital Authority (DHHA) – for "x-ray and evaluation."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00015, docket #74-3.

12.     The City and County of Denver/DSD contracts with the DHHA to provide dental care for inmates of Denver jails.  Exhibit C to Corrections Defendants' Motion, ¶2, Affidavit of Gary Wilson, Director of Corrections and Undersheriff, docket #76-3.  The DSD does not have dental care professionals on staff.  *Id.*

13.     On November 10, 2009, Plaintiff was taken to DHHA where he was treated by Dr. Zallen and Dr. Whitestone.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00016, 00017, docket #74-3.

14.     Plaintiff told Dr. Whitestone "I need a tooth pulled," and Dr. Whitestone noted "gross decay #15, bone loss #15… irreversible pulpitis #15, non-restorable #15."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00019, docket #74-3.

15.     Plaintiff completed an authorization form permitting Dr. Whitestone to remove tooth # 15 due to tooth decay.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00018, docket #74-3.

16.     Dr. Whitestone extracted tooth #15 and Plaintiff was given post-procedure instructions.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00019, 00020, docket #74-3.

17.     On February 15, 2010, Plaintiff completed a request for medical assistance, stating "cavity – I think I lost a filling… Need to see dentist."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00021, docket #74-3.  Plaintiff's condition was assessed by a Licensed Practical Nurse who noted Plaintiff complained of "pain to [tooth] #30" and had a filling in that tooth "a few years ago." *Id.* Plaintiff was scheduled for the dental line and told to return if symptoms got worse.  *Id.*

18.     On February 23, 2010, the dentist diagnosed a draining fistula at tooth #31, and a lingual distal fracture at tooth #30.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00022, docket #74-3.  The dentist also noted that Plaintiff "refuses treatment."  *Id.*

19.     On July 19, 2010, Plaintiff was seen again by the dentist, who placed a temporary filling on tooth #32.  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00023, docket #74-3.

20.     On November 14, 2010, Plaintiff was seen by the dentist for an annual examination.  The dentist noted "#32 has IRM temp which is doing fine."  Exhibit A to Hospital Defendants' Motion, Dental Records of Plaintiff Dexter Harris, No. HARRIS-00024, docket #74-3.

21.     Defendant Dr. Christian Stob did not provide dental care to Plaintiff during the period 2008-2010.  Exhibit B to Hospital Defendants' Motion, Affidavit of Dr. Christian M. Stob, ¶ 8, docket #74-4.

22.     Defendant Director Gary Wilson is not a dental care professional and has never ordered that teeth be extracted.  Exhibit C to Corrections Defendants' Motion, Affidavit of Director Gary Wilson, ¶ 3, docket #76-3.

23.     On November 2, 2012, the Clerk of this Court addressed a letter to Plaintiff informing him that his document dated October 28, 2012 and titled, "Plaintiff's Response to Defendants First Set of Written Discovery 'Denver Health Medical Center' and Christian Stob," was being returned to him pursuant to Fed. R. Civ. P. 5(d) and D.C. Colo. LCivR 5.5.  Plaintiff's Response, docket #80 at 16-20.  The document was not filed on the docket pursuant to the above-cited rules.  *Id.*[2]

## LEGAL STANDARDS

### I.      Treatment of *Pro Se* Pleadings

As Plaintiff proceeds *pro se*, the Court must construe his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*,

_____

[2]The Court notes the Defendants' argument that the facts set forth in the Defendants' requests for admissions to the Plaintiff be deemed admitted for Plaintiff's failure to timely respond to such requests.  Certainly, the record reflects that Plaintiff never served his responses to the discovery requests on the Defendants; rather, he sent them to the Court with a certificate of service reflecting his understanding that the responses would be filed and served electronically. *See* Response, docket #80 at 20.  However, in accordance with federal and local rules, the responses were never filed or served, and there is no indication that the Plaintiff served the responses once they were returned to him.  Therefore, it would be proper to deem admitted the facts set forth in the Defendants' requests for admission. *See* Fed. R. Civ. P. 36(a)(3).

However, for purposes of this motion and as set forth herein, the Court relies on the documents and testimony in the record to make its findings, and determines it unnecessary to consider any facts set forth in the Defendants' requests for admission.  Of course, the District Court might determine otherwise as it sees fit.

935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.  Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint,

but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . .  if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).  "The court views the record and draws all inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## III.   Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment

by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), overruled on other grounds by *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused

either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.  However, "a

delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show

the delay resulted in substantial harm.'" *Id.* at 751 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276

(10th Cir. 2001)).  Substantial harm includes "lifelong handicap, permanent loss, or considerable

pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

## DISCUSSION

First, the Court notes that the Defendants have properly supported their motions for summary

judgment with admissible evidence. *Trainor*, 318 F.3d at 979.  In order to survive the motions,

Plaintiff must satisfy his burden showing there are genuine issues of material fact to be determined.

*Celotex*, 477 U.S. at 322.  As Defendants properly supported their motions with prison medical

records and affidavits, Plaintiff may not rest on the allegations contained in the Amended Complaint,

but must respond with specific facts showing a genuine factual issue for trial. *Hysten*, 296 F.3d at

1180; Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary

materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski*, 134 F.3d at 1008

(citation omitted).

Here, Plaintiff provides the Court no documents nor testimony in support of the arguments

he makes in the briefing concerning the merits of his claims.  However, in the summary judgment

context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the

standards for affidavits outlined in Rule 56. *See Adams v. Dyer,* 223 F. App'x 757, 764 n. 7 (10th

Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)).  In this case, Plaintiff

declares under penalty of perjury that the facts set forth in his Amended Complaint are true and

correct.  Amended Complaint, docket #6 at 8.  Therefore, along with the documents and testimony

provided by the Defendants, the Court will consider facts (as opposed to legal conclusions, bare assertions, or merely conclusory statements) alleged in the Amended Complaint, but only insofar as it satisfies Rule 56.

Pursuant to the District Court's August 27, 2012 order, the following claims remain in this case: Eighth Amendment and Fourteenth Amendment due process claims against Defendants Stob and Wilson individually, and municipal liability claims based upon the same facts against Defendants City and County of Denver (City) and Denver Health and Hospital Authority (DHHA). The record reflects that the Plaintiff may have been a pretrial detainee during part or all of the time period at issue here. Exhibit A to Corrections Defendants' Motion, ¶2, Affidavit of Sergeant Joseph Garcia, docket #76-1. As neither the Amended Complaint nor Plaintiff's response brief reflect any facts or argument in support of a separate due process claim against the individual Defendants or the DHHA, the Court will conclude that Plaintiff brings these Fourteenth Amendment claims (to the extent that they exist) solely in recognition of his pretrial detainee status. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, ... [but] this court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983"). Therefore, the Court will analyze the Plaintiff's claims against Defendants Stob, Wilson and the DHHA as claims for Eighth Amendment violations only.

In the present motions, Defendants City and DHHA argue the Plaintiff fails to demonstrate issues of fact concerning municipal liability for Eighth and Fourteenth Amendment violations, and Defendants Wilson and Stob argue they are entitled to qualified immunity because the Plaintiff fails to demonstrate issues of fact concerning their personal participation in a constitutional violation, if

any.  The Court will analyze each argument to determine whether summary judgment is appropriate.

## I.        Municipal Liability

The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 n. 55 (1978).   Plaintiff alleges Eighth and Fourteenth Amendment claims against the municipal Defendants for their "deliberate indifference to Plaintiff's serious medical needs."   Amended Complaint, docket #6 at 4, 5.  Defendants City and DHHA argue they are entitled to summary judgment since the Plaintiff fails to assert facts demonstrating triable issues as to whether an unconstitutional policy or custom exists and, if so, whether it has been enforced by the City or corrections facility.

Local governments can be liable under § 1983 "only for their *own* illegal acts."  *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotation and citations omitted) (emphasis in original).  Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff."  *Hinton*, 997 F.2d at 782 (citing *Monell*, 436 U.S. at 692).  Rather, to prove a § 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged.  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  In establishing the first requirement, a plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these

policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

A.     Eighth Amendment claims

Here, Plaintiff alleges that "Denver Health medical center is the entity responsible for providing medical care to inmates at D.D.C." and Defendant Stob "either knew or should have known of the widespread policy and custom within her [sic] facility of denying inmates all dental treatment but extractions." Amended Complaint, docket #6 at 4, 5. As against the City, Plaintiff alleges primarily the same: "Denver Detention Center ... is responsible for housing and providing humane conditions for inmates housed in the facility" and "Wilson either knew or should have known of the widespread policy and custom within his facility of denying inmates all dental treatment but extractions." *Id.* at 5. Plaintiff states that "the Defendant's [sic] acts or inaction has caused the Plaintiff severe pain and a deterioration of overall health" including "gum disease, hypertension, tooth decay, abscesses, infection of the mouth, and an increasing inability to eat, resulting in hunger, and emotional distress." *Id.*

The Plaintiff recognizes that the municipal custom or policy may be shown in a number of ways, and Plaintiff specifically identifies "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *See Bryson*, 627 F.3d at 788. However, citing *City of Canton v. Harris*, 489 U.S. 378 (1989) and *Pembauer v. Cincinnati*, 475 U.S. 469 (1986), the Plaintiff asserts that municipal liability attaches here because of the Defendants' deliberate choice to follow a course of action from among various

alternatives.  Response, docket #80 at 9.  Plaintiff contends that the ability of a detention facility dentist to refer an inmate to the DHHA for treatment demonstrates that the DHHA has sufficient facilities to provide the inmate with some form of treatment, and the denial of such referral amounts to a conscious choice to deny Plaintiff needed medical treatment.  *Id.*  Further, Plaintiff contends that a policy or custom in the form of "decisions of employees with policymaking authority" is shown by Defendants' admission that "the dental professionals of the DHHA make professional dental care decisions."  *Id.* at 10.

First, it is difficult to discern whether the Plaintiff argues that the "deliberate choice to follow a course of action from among various alternatives" describes the custom or policy on which he relies for his Eighth Amendment municipal liability claim.  *See* Response, docket #80 at 8-9.  If so, the Plaintiff mis-reads the opinions in *City of Canton* and *Pembauer*.  There, the Supreme Court simply defined the term, "deliberate indifference," with the language "a deliberate choice to follow a course of action from among various alternatives."  *See City of Canton*, 489 U.S. at 389 (citing *Pembauer*, 475 U.S. at 483-84).  So, the Supreme Court in *City of Canton* held that municipal liability may be found under a "failure to train" theory "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.

Here, the Plaintiff mentions the "failure to adequately train or supervise employees" theory in his response brief.  Response, docket #80 at 2-3, 8-9.  Thus, to the extent the Plaintiff relies on such theory, the Court finds that the Plaintiff has failed to establish an issue of fact as to whether Defendants City and DHHA failed to train or supervise corrections and hospital employees by making a deliberate choice to follow a course of action (pull teeth only) among various alternatives, which resulted in the Plaintiff's alleged injuries.

First, Plaintiff fails to demonstrate facts showing that any of the Defendants followed a "pull teeth only" course of action.  The record reflects that Plaintiff sought and received several different forms of treatment, depending upon the circumstances.  First, in late 2008, Plaintiff requested medical assistance, stating "I have an abscess and need teeth cleaned."  He was seen by a nurse who gave him medication for the pain he described and scheduled him to see the dentist.  A few days later, Plaintiff was treated by the dentist, who examined him and recommended soft brushing and pain medication for two weeks.  Apparently, Plaintiff had no more problems until May 2009,  when he requested medical assistance, stating "gums bleeding, sore – infected."  On May 8, 2009, a nurse assessed his condition and noted "No S/S infection noted ... NO evidence of dental abscess," and prescribed hydrogen peroxide (H2O2) mouth rinse "BID x 10 days."

It was not until six months later that the Plaintiff completed another request for medical assistance, stating "tooth ache - extreme pain."  He was evaluated that same day by a nurse, who noted no swelling, but scheduled Plaintiff to a see a dentist (DDS) on 10/27/09, prescribed Motrin, and advised Plaintiff to report any swelling.  Plaintiff was again evaluated the next morning at his request by a nurse who noted swelling on the left side and noted Plaintiff was scheduled for the dental line.  The next day, a doctor assessed Plaintiff's condition and prescribed penicillin and Motrin.  A few days later, Plaintiff was treated by the dentist who noted that tooth #15 was painful and slightly mobile, and that Plaintiff was taking penicillin.  The dentist referred Plaintiff to DHHA for "x-ray and evaluation."  Two weeks later, Plaintiff was taken to DHHA where he was treated by Dr. Zallen and Dr. Whitestone.  Plaintiff told Dr. Whitestone "I need a tooth pulled," and Dr. Whitestone noted "gross decay #15, bone loss #15… irreversible pulpitis #15, non-restorable #15." Plaintiff authorized Dr. Whitestone in writing to extract tooth # 15.

Then, in February 2010, Plaintiff completed a request for medical assistance, stating "cavity – I think I lost a filling… Need to see dentist." Plaintiff was examined by a nurse who noted Plaintiff complained of "pain to [tooth] #30" and had a filling in that tooth "a few years ago." Plaintiff was scheduled for the dental line and told to return if symptoms got worse. A week later, the dentist diagnosed a draining fistula at tooth #31, and a lingual distal fracture at tooth #30. However, the dentist also noted that Plaintiff "refuses treatment."

Five months later, in July 2010, Plaintiff was seen again by the dentist, who placed a temporary filling on tooth #32. Then, in November 2010, Plaintiff was seen by the dentist for an annual examination, who noted "#32 has IRM temp which is doing fine."

These facts demonstrate that the Plaintiff was examined and treated – whether by pain medication, rinse, antibiotic, extraction or filling – each time he sought assistance for dental problems, unless, of course, he refused treatment. There is no indication by these facts that the Defendants denied Plaintiff treatment for his dental problems or participated in, or enforced, a "pull teeth only" custom or policy.

The Plaintiff argues that the dental records provided by the Defendants are "incomplete and misleading." However, he does not dispute their authenticity and he provides no evidence demonstrating how the records may be incomplete or misleading.[3] Further, there is nothing in the record demonstrating that a "pull teeth only" custom or policy was "widespread" or, even, was applied to anyone, including the Plaintiff.

---

[3]Plaintiff mentions that he "has attempted to hire an investigator to contact an expert witness, and still plans to subpoena local dentists at trial." Response, docket #80 at 3. However, the discovery cutoff in this case was October 31, 2012 and the Plaintiff has provided nothing indicating that he disclosed any "local dentists" as witnesses in this case.

Finally, Plaintiff asserts that Defendants should have treated, or chose not to treat, the underlying disease that caused his tooth decay, which also has resulted in pain, gum disease, hypertension, abscesses, and hunger, and which also can result in death.  First, the Plaintiff provides no evidence, other than his own self-serving statements, that he has a "disease" which has caused his tooth decay, or that such disease has, or can, cause the injuries he alleges he suffers.  Certainly, there may be several causes for tooth decay, including poor dental hygiene.  However, here, uncorroborated self-serving statements are insufficient to defeat a motion for summary judgment. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

Second, to the extent the Plaintiff disagrees with the treatment he received from the City and the DHHA, such disagreement does not support finding a violation of the Eighth Amendment.  *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (a "prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

B.      Fourteenth Amendment claim

For his Claim Three, Plaintiff alleges that "the Policy and Custom of (pull teeth only) practiced by [DHHA], implemented at the Denver Detention Center, is "of such character as to shock the general conscience or to be intolerable to fundamental fairness to the extent that the constitutional right to be free from cruel and unusual punishment (was) violated ..." and [t]he City of Denver's acquiescence of the widespread unlawful policy and custom represents approval of its employee' [sic] conduct resulting from those conditions so as to give rise to [a] cause of action under [the] section of [the] Civil Rights Act providing for civil action for deprivation of rights."  Amended Complaint, docket #6 at 6.  The Court construes Claim Three as a claim for violation of Plaintiff's

19

substantive due process right under the Fourteenth Amendment.

"To show a deprivation of a protected interest ... in violation of substantive due process protection, a plaintiff must demonstrate that the government officials acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Deray v. City of Colorado Springs, Colo.*, 2012 WL 1901220, at *6 (D. Colo. May 25, 2012) (quoting *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009)). "'The "ultimate" standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.'" *Id.* (quoting *Graves v. Thomas,* 450 F.3d 1215, 1220 (10th Cir. 2006)). "To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Livsey v. Salt Lake Cnty.,* 275 F.3d 952, 957-58 (10th Cir. 2001) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)).

Here, the Court has determined that Plaintiff fails to demonstrate facts raising a triable issue as to whether the City the enforced a policy of "pull teeth only," or even whether such policy exists. Consequently, the Court cannot find that the Plaintiff has shown issues of fact demonstrating that the City of Denver "acquiesced" in any alleged "widespread unlawful policy and custom" that is so egregious as to shock the contemporary conscience.

Accordingly, this Court concludes that the Plaintiff has failed to raise genuine issues of material fact demonstrating the Defendants City and DHHA enforced a custom or policy of denying all dental treatment except extractions, which resulted in Plaintiff's alleged injuries.  The Court

respectfully recommends that the District Court grant the Defendants' motions for summary judgment dismissing Plaintiff's Eighth and Fourteenth Amendment claims against Defendants City and DHHA.

## II.   Qualified Immunity

Defendants Christian Stob and Gary Wilson assert that they are entitled to qualified immunity on the Plaintiff's claims against them in their individual capacities.   Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "It is an entitlement not to stand trial or face the other burdens of litigation."   *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).   "The privilege is an immunity from suit rather than a mere defense to liability."   *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial."   *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Harlow*, 457 U.S. at 806-08 (1982).   Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.   *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 243 (2009)).

Here, the Court will examine first whether Plaintiff has demonstrated a genuine issue of

material fact concerning whether Defendants violated his constitutional rights.  *See Pearson*, 555 U.S. 223, 242-43 (2009) (affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").  If the Court finds a genuine issue of fact, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.  *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

The individual Defendants contend that the Plaintiff fails to come forth with facts demonstrating a triable issue concerning their personal participation in the alleged constitutional violations.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights.  *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

Supervisory status alone does not create § 1983 liability.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)).  Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted).  In other words, "Section 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy

the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights ... secured by the Constitution ... .'" *Dodds*, 614 F.3d at 1199 (interpreting *Iqbal* and quoting 42 U.S.C. § 1983).

For Claim One, Plaintiff alleges that Defendant Stob, representative for Denver Health, "is the individual who is responsible, through actual or constructive knowledge, for enforcing a *policy and custom, (pull teeth only)*, that caused plaintiff's injuries." Amended Complaint, docket #6 at 4 (emphasis in original). For Claim Two, Plaintiff alleges the same against Defendant Wilson, D.D.C. Administrator: he "is the individual who is responsible, through actual or constructive knowledge, for enforcing a *policy and custom, (pull teeth only)*, that caused plaintiff's injuries." *Id.* at 5 (emphasis in original). Defendants argue that Plaintiff has failed to come forth with facts demonstrating triable issues as to whether a "pull teeth only" policy exists and whether an "affirmative link" exists between Plaintiff's alleged injuries and Stob and Wilson's enforcement of such policy. The Court agrees.

Essentially, the Plaintiff alleges that he suffers ongoing physical ailments resulting from a lack of dental care and treatment, the lack of which stems from medical staff refusing to provide such care and treatment pursuant to a policy allowing only tooth extractions (as opposed to other dental treatments), which Defendant Stob has knowingly enforced at the medical center and which Defendant Wilson has knowingly enforced at the detention center. The Plaintiff need not demonstrate that the Defendants "personally participated in ... ordering that teeth be extracted" (Corrections Defendants' Motion, ¶ 6, docket #76), or that they "participat[ed] ... in the dental care provided to Plaintiff" (Hospital Defendants' Motion, ¶ 24, docket #74). *See Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263–64 (D. Colo. 2010) ("The exercise of control which may create

the 'affirmative link' does not need to be the sort of on-the-ground, moment-to-moment control that defendants appear to suggest. Rather, the establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation... . [W]here an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application."). Rather, the Plaintiff may "succeed in a Section 1983 suit against Defendants Stob and Wilson by demonstrating: "(1) the [Defendants] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

As set forth above, the Court concludes that the Plaintiff has failed to come forward with facts demonstrating a triable issue as to the existence or enforcement of a policy by the City or the DHHA denying all dental treatment except extractions. Consequently, the Plaintiff has failed to raise genuine issues of fact demonstrating Defendants Stob and Wilson "promulgated, created, implemented or possessed responsibility for the continued operation of a [pull teeth only] policy." There is simply no indication by the facts on the record in this case that the Plaintiff, or anyone else, was denied all dental treatment except extractions. Accordingly, this Court concludes the individual Defendants are entitled to qualified immunity, and recommends that the District Court grant the Defendants' motions for summary judgment dismissing the Plaintiff's Eighth Amendment claims against Stob and Wilson.

## **CONCLUSION**

The Plaintiff has failed to raise genuine issues of fact establishing the City and DHHA

enforced, and Stob and Wilson promulgated, created or implemented,  a custom or policy denying Plaintiff and his fellow inmates all dental treatment except extractions. Therefore, the Court respectfully RECOMMENDS that the District Court **GRANT** the Motion for Summary Judgment by Defendants Denver Health and Hospital Authority and Christian Stob ("Hospital Defendants") [filed November 29, 2012; docket #74] and the Motion for Summary Judgment filed by Defendants Gary Wilson and the City and County of Denver ("Corrections Defendants") [filed November 29, 2012; docket #76].

Dated at Denver, Colorado, this 30th day of January, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge